UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

TOADFLAX NURSERY, LLC; Z & M FARM;     1:20-CV-1620 (GTS/CFH)
LLC; and RICHARD W. MORRIS, JR.,

                          Plaintiffs,

v.

COUNTY OF WASHINGTON; SHERIFF
JEFFREY J. MURPHY, in His Official and
Individual Capacities; LIEUTENANT TODD
LEMERY, in His Official and Individual
Capacities; SERGEANT TIMOTHY
CARROLL, in His Official and Individual
Capacities; DEPUTY DIRECTOR
TIMOTHY R. HARDY, in His Official and
Individual Capacities; DEPUTY MATTHEW
K. JACKSON, in His Official and Individual
Capacities; DEPUTY KYLE KOLAR, in His
Official and Individual Capacities; and
DEPUTY JOHN K. LATOUR, in His Official
and Individual Capacities,

                      Defendants.

─────────────────────────────────────────

APPEARANCES:                        OF COUNSEL:

TABNER, RYAN & KENIRY, LLP       WILLIAM J. KENIRY, ESQ.
  Counsel for Plaintiffs            ERIC NOLAN DRATLER, ESQ.
18 Corporate Woods Boulevard
Albany, NY 12211-2605

JOHNSON & LAWS, LLC           GREGG TYLER JOHNSON, ESQ.
  Counsel for Defendants          APRIL J. LAWS, ESQ.
646 Plank Road - Suite 205        NICOLE C. HADDADNIA, ESQ.
Clifton Park, NY 12065

Glenn T. Suddaby, United States District Judge

**<u>DECISION and ORDER</u>**

Plaintiffs Toadflax Nursery, LLC, Z & M Farm, LLC, and Richard W. Morris, Jr. brought this action against defendants Sheriff Jeffrey J. Murphy, Lieutenant Todd Lemery, Sergeant Timothy Carroll, Deputy Director Timothy R. Hardy, Deputy Matthew K. Jackson, Deputy Kyle Kolar, Deputy John K. Latour, in their official and individual capacities, and the County of Washington, pursuant to 42 U.S.C. § 1983, alleging violations of their due process and search and seizure rights under the Fourth, Fifth, and Fourteenth Amendments, violations of their corollary rights under the New York State Constitution, and state law claims for trespass, negligence, conversion, intentional infliction of emotional distress, and prima facie tort. (Compl., Dkt. No. 2.)  Pending is defendants' motion for summary judgment.  (Dkt. No. 34.) For the reasons that follow, the motion is granted in part and denied in part.

## I.      BACKGROUND

### A.      Relevant Procedural History

Plaintiffs commenced this action in New York State Supreme Court in Washington County (Dkt. No. 2), and defendants removed the action to this Court (Dkt. No. 1).  Now pending is defendants' motion for summary judgment.  (Dkt. No. 34.)

### B.      Undisputed Material Facts[1]

---

[1]   Unless otherwise noted, the following facts are not in dispute.  The Court notes that Plaintiffs respond to a majority of defendants' asserted material facts with a variation of the following: "Denies knowledge or information sufficient to dispute but agrees to the extent that the paragraph cited to is consistent with the statement in [one or multiple defendants' declaration or deposition]."  (Dkt. No. 40, Attach. 1.)  Such responses are not proper denials of asserted material facts.  A statement of material facts is not a complaint to which a denial of knowledge or information sufficient to oppose allegations is an adequate answer—at the summary judgment phase discovery has been conducted and the parties have the information necessary to either admit the truth of a statement or to contradict it.  *See Davis v. City of Syracuse*, No. 5:12-CV-0276, 2015 WL 1413362, at *2 (N.D.N.Y. Mar. 27, 2015) ("On a motion for summary judgment, denials of fact that are based on a lack of personal knowledge,

On March 15, 2019, Toadflax and Morris, as Executive Member of Toadflax, submitted an application to the New York Department of Agriculture and Markets ("NYSDAM") for a permit to cultivate hemp, for research purposes, on property located at 2046 County Route 43, Kingsbury, New York (hereinafter referred to as "the property").  (Defs.' Statement of Material Facts (SMF) ¶¶ 56-57, Dkt. No. 34, Attach. 13; Dkt. No. 34, Attach. 3.)  Morris indicated on the application, as required, that certain security measures, such as security cameras, a secured and locked gate at the entrance of the property, and signs indicating that the growing site is used for industrial hemp, would be implemented on the property.  (Defs.' SMF ¶¶ 60-61.)  And, additionally, Morris indicated on the application, as he was required, that notice of the hemp-growing operations would be provided to all "local authorities."  (*Id.* ¶ 61)

Ultimately, Toadflax was granted the permit it sought.  (*Id.* ¶ 65.)  However, Morris failed to implement at least some security measures required by NYSDAM, such as a locked gate.  (*Id.* ¶¶ 68-69.)  Morris' daughter, Madiline Morris, provided the Toadflax permit information "to an officer at [the Washington County Sheriff's Office (hereinafter referred to as "WCSO")] who told her he would pass it along."  (Pls.' Counterstatement of Material Facts (CSMF) ¶ 14, Dkt. No. 40, Attach. 1.)

On October 1, 2019, at around 9:00 P.M., Lieutenant Lemery and Deputy Director Hardy were traveling on County Route 43 and noticed two vehicles that were pulled onto the side of the road.  (Defs.' SMF ¶¶ 71-72.)  One of the vehicles fled as the officers approached,

---

mere information or belief, and/or inadmissible evidence are insufficient to create a genuine dispute.").  Indeed, the Local Rules of Practice require non-movants to "set forth a specific citation to the record where the factual issue arises" with each denial of an asserted material fact.  N.D.N.Y. L.R. 56.1(b).  Therefore, any such response by plaintiffs is deemed an admission for the purposes of the pending motion.  *See id.*

and Lieutenant Lemery and Deputy Director Hardy "observed subjects running from the field towards the remaining vehicle that was parked on the side of County Route 43." (*Id.* ¶¶ 73-74.) Lieutenant Lemery initiated a traffic stop of the vehicle that remained on the side of the road and "radioed for additional units." (*Id.* ¶¶ 75-76.) Lieutenant Lemery noticed what appeared to be bags of marijuana plants, and the driver of the parked vehicle stated that the individuals involved "were attempting to acquire what they believed was marijuana from an illegal grow[-]site." (*Id.* ¶¶ 77-78, 86.) Deputy Jackson, responding to the call for additional units, attempted to locate the vehicle that fled the scene. (*Id.* ¶ 79.)

When Sergeant Carroll arrived on scene, he accompanied Lieutenant Lemery on a search of the field from which the suspects were observed running, to investigate further, because Lieutenant Lemery surmised that additional suspects may still be in the field. (*Id.* ¶¶ 80-82.) No additional suspects were located; however, while searching, Sergeant Carroll "observed what he believed to be rows of illegal marijuana plants." (*Id.* ¶ 83.) At this time it was dark and there was no artificial lighting to illuminate the field. (*Id.* ¶ 69.) Hemp and marijuana "are exactly identical in outward appearance" and it is "impossible" to tell the difference between them "without a lab report." (*Id.* ¶¶ 8-9.) Indeed, the chemical composition of the plant must be assessed by laboratory equipment in order to differentiate hemp and marijuana. (*Id.* ¶ 10.)

Sergeant Carroll radioed Lieutenant Lemery "to notify him that he had found contraband" and began harvesting plants.[2] (*Id.* ¶¶ 88-89.) Deputy Jackson, at the direction of Sergeant Carroll, provided a light source for Sergeant Carroll and also began to harvest plants.

---

[2] New York State Trooper Timothy Carrow also harvested plants with Sergeant Carroll; however, Trooper Carrow has not been named as a defendant. (Defs.' SMF ¶¶ 55, 89.)

(*Id.* ¶¶ 91-92.)  Deputy Jackson noticed tags on the plants, bearing the Toadflax emblem, and notified Lieutenant Lemery, who then inspected the bag of plants near the roadside and discovered that those plants also had Toadflax tags.  (*Id.* ¶¶ 97, 101-102.)  "In response, Lieutenant Lemery advised all WCSO personnel to immediately cease harvesting plants."  (*Id.* ¶ 103.)

Morris was identified as the owner of Toadflax.  (*Id.* ¶ 106.)  Deputy Kolar called Morris to request that he "come to the scene."  (*Id.*)

## II.   GOVERNING LEGAL STANDARD

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 380 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it might affect the outcome of the suit under the governing law."  *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The Court's inquiry upon summary judgment is "determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.  "When analyzing a summary judgment motion, the [C]ourt 'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900, 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013)

(quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)). "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Everett v. Dean*, No. 3:20-CV-01260, 2023 WL 5452753, at *4 (N.D.N.Y. Aug. 24, 2023) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002)).

Once a defendant has met this initial burden, the plaintiff must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 323-24 (internal quotation marks omitted). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Further, if the evidence favoring the nonmoving party is "merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

"Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## III.   ANALYSIS

### A.   Defendants' Unopposed Arguments

Plaintiffs have provided no opposition to the following arguments asserted by

defendants: (1) that defendants are entitled to summary judgment on plaintiffs' Section 1983

claims against Sheriff Murphy, Deputy Director Hardy, Lieutenant Lemery, Deputy Kolar, and

Deputy Latour, because plaintiffs have not adduced admissible record evidence from which a

rational jury could find that those defendants were personally involved in the alleged

constitutional deprivations, because none of those defendants harvested any hemp plants (Dkt.

No. 34, Attach. 14 at 25-26); (2) that the individual defendants are entitled to qualified

immunity[3] (*id.* at 23-24; Dkt. No. 40 at 10-11); (3) that plaintiffs' claim of intentional infliction

of emotional distress must be dismissed because plaintiffs cannot demonstrate that defendants'

actions were extreme and outrageous, that their actions were done with the intent to cause or

with disregard of a substantial probability of causing emotional distress, nor that Morris suffered

any emotional injury (Dkt. No. 34, Attach. 14 at 30-31); and (4) that plaintiffs' claim of prima

facie tort must be dismissed because plaintiffs cannot show that defendants acted with

"disinterested malevolence" and because plaintiffs have failed to allege special damages (*id.* at

31-32).

 "In this District, when a non-movant willfully fails to oppose a legal argument asserted

by a movant, the movant's burden with regard to that argument is lightened, such that, in order

to succeed on that argument, the movant need only show that the argument possess[es] facial

merit, which has appropriately been characterized as a 'modest' burden." *Johnson v. Lew*, No.

1:13-CV-1072, 2015 WL 4496363, at *5 & n.6 (N.D.N.Y. July 23, 2015); *see Metro. Prop. &*

*Cas. Ins. Co. v. Rodick*, No. 1:21-CV-1039, 2023 WL 6122849, at *5 & n.4 (N.D.N.Y. Sept. 19,

---

  [3]   Defendants concede, however, that plaintiffs have addressed this argument with respect to Sergeant Carroll and Deputy Jackson.  (Dkt. No. 44 at 2.)

2023); N.D.N.Y. L.R. 7.1(a)(3).  And, upon a finding that the unopposed argument is facially meritorious, the non-movant is deemed to have "consented" to summary judgment, and the Court may grant the motion.  *See S.E.C. v. McGinn, Smith & Co.*, No. 1:10-cv-457, 2015 WL 667848, at *1 (N.D.N.Y. Feb. 17, 2015).

Here, upon a thorough review of the parties' submissions, the Court finds that defendants have met the above-described burden and, accordingly, that plaintiffs have effectively consented to summary judgment on defendants' unopposed arguments.  Therefore, the Section 1983 claims are dismissed as against Sheriff Murphy, Deputy Director Hardy, Lieutenant Lemery, Deputy Kolar, and Deputy Latour, and the state-law claims for intentional infliction of emotional distress and prima facie tort are dismissed as against all defendants.

### B.    Plaintiffs' Constitutional Claims[4]

#### 1.    Search and Seizure

Defendants argue that they are entitled to summary judgment on plaintiffs' Fourth Amendment claim because the plants were in plain sight in an open, unmarked, and unsecured field, and that, regardless, exigent circumstances permitted warrantless entry onto the property. (Dkt. No. 34, Attach. 14 at 19-21.)  Plaintiffs argue that the warrantless entry on the property was unconstitutional because the officers were not in hot pursuit and that the plain-view doctrine is inapplicable because the entry onto the property was unlawful.  (Dkt. No. 40 at 16-20.)

"The [Fourth] Amendment protects the people from unreasonable searches and seizures

---

[4]   The Court's use of the term "defendants" throughout its analysis of the constitutional claims refers only to the County, Sergeant Carroll, and Deputy Jackson, because, as set forth above, the Section 1983 claims have been dismissed as against all other defendants.

8

of their persons, houses, papers, and effects." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 62 (1992) (noting that "the [Fourth] Amendment protects property as well as privacy") (internal quotation marks and citation omitted). "Reasonableness is still the ultimate standard under the Fourth Amendment." *Soldal*, 506 U.S. at 71 (internal quotation marks and citation omitted).

It has long been established that "'except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant.'" *Groh v. Ramirez*, 540 U.S. 551, 560 (2004) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528-29 (1967); *see Lange v. California*, 141 S. Ct. 2011, 2017 (2021) ("[The Fourth Amendment] 'generally requires the obtaining of a judicial warrant' before a law enforcement officer can enter a home without permission.") (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)). However, where exigent circumstances exist, a police officer may enter property without warrant or permission. *Kentucky v. King*, 563 U.S. 452, 459-61 (2011). The Supreme Court has recognized certain specific exigencies that justify warrantless entry, such as when officers are in hot pursuit of a fleeing felon, to prevent the imminent destruction of evidence, or to provide emergency aid. *Id.*

Additionally, "[t]he Supreme Court has held that '[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.'" *Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 22 (E.D.N.Y. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 587 (1980)). "'Under [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if officers have a lawful right of access to the object, they may seize it without a warrant.'" *Genovese,* 921 F. Supp. 2d at 22

(quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).  The plain-view doctrine permits the warrantless seizure of private property where three requirements are satisfied: (1) "the police officer must lawfully make an 'initial intrusion' or otherwise properly be in a position from which he can view a particular area"; (2) "the officer must discover incriminating evidence 'inadvertently,' which is to say, he may not 'know in advance the location of [certain] evidence and intend to seize it,' relying on the plain[-]view doctrine only as a pretext"; and (3) "it must be 'immediately apparent' to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure."  *Texas v. Brown*, 460 U.S. 730, 737 (1983) (citations omitted).

Furthermore, a police inspection of open, unsecured fields does not violate the Fourth Amendment, because "open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance."  *Oliver v. United States*, 466 U.S. 170, 179 (1984).  "There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields."  *Oliver,* 466 U.S. at 179.

Here, based on the current record, the Court finds that defendants' actions did not violate the Fourth Amendment, because their search of the property and seizure of the plants was reasonable under the circumstances.  The Court renders his finding for two reasons.

First, defendants lawfully entered the property, because they were in hot pursuit of suspected felons.  (Defs.' SMF ¶¶ 81-83.)

Second, defendants' discovery and seizure of the plants was lawful under the plain-view doctrine.  Sergeant Carroll's initial intrusion onto the property was lawful, because he was

investigating a crime in progress and searching the field for additional suspects.  (Defs.' SMF

¶¶ 77-88.)  During his search for additional suspects, Sergeant Carroll happened to observe what

he reasonably believed to be rows of illegal marijuana plants.  (*Id.* ¶ 83.)  After concluding his

search, and having been unable to locate other suspects in the field, Sergeant Carroll notified

Lieutenant Lemery that he had located contraband and began the procedure of confiscating the

purported illicit substance, by harvesting the plants.  (*Id.* ¶¶ 88-89.)  Accordingly, Sergeant

Carroll's actions meet the requirements of the plain-view doctrine, because his initial intrusion

(in pursuit of suspects) was lawful, he "inadvertently" discovered the plants, and it was

sufficiently "immediately apparent" to Sergeant Carroll that the plants were contraband (given

that hemp and marijuana are impossible to distinguish without laboratory testing).  *Payton*, 445

U.S. at 587.

Therefore, defendants lawfully searched the property and seized the plants and are

entitled to summary judgment with respect to the Fourth Amendment search and seizure claim.[5]

## 2.    Due Process

Plaintiffs have not articulated—in either the complaint or in their opposition to the

pending motion—whether their due process claim is based upon alleged violations of

procedural or substantive due process.  Although defendants have identified this ambiguity

(Dkt. No. 34, Attach. 14 at 21-22), plaintiffs make no attempt to clarify their position, referring

---

[5]   The language of the Fourth Amendment of the United States Constitution and of
Article 1, Section 12 of the New York State Constitution are identical and, as such, alleged
violations of either are subject to the same analysis.  *See Mittelman v. Cnty. of Rockland*, No.
07-CV-6382, 2013 WL 1248623, at *23 (S.D.N.Y. Mar. 26, 2013) (citing *People v. Gnozzo*, 31
N.Y.2d 134, 145 (1972)).  Therefore, although defendants do not explicitly mention the New
York State search and seizure claim in their arguments, it must be dismissed for the same
reasons as the Fourth Amendment claim.

to "due process" broadly (Dkt. No. 40 at 15-16).  The Court will, nonetheless, undertake an analysis of both procedural and substantive due process.

### i.  Procedural Due Process

As for a procedural due process claim, defendants argue that plaintiffs have failed to demonstrated that any deprivation of property was the result of established procedures or that plaintiff have availed themselves of any post-depravation remedies available under New York law.  (Dkt. No. 34, Attach. 14 at 22.)  Plaintiffs respond that the WCSO's practice of uprooting suspected marijuana plants violated their due process rights; however, plaintiffs fail to address defendants' argument regarding post-deprivation remedies.  (Dkt. No. 40 at 15-16.)

"A claim under Section 1983 for deprivation of procedural due process raises two threshold questions: (1) 'whether the plaintiff possessed a liberty or property interest' and, if so, (2) 'what process was due before the plaintiff could be deprived of that interest.'"  *Colson v. N.Y. Police Dep't*, No. 13-CV-5394, 2015 WL 64688, at *9 (E.D.N.Y. Jan. 5, 2015) (quoting *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995)).  "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees."  *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted).

"When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post[-]deprivation procedures will not, ipso facto, satisfy due process."  *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880 (citations omitted).  This is because "[w]here the deprivation is systemic, litigants have a

well-established right to pursue their claims in federal court without resorting to state judicial remedies." *Nestle Waters N. Am., Inc. v. City of New York*, No. 15-CV-05189, 2016 WL 3080722, at *7 (S.D.N.Y. May 25, 2016), *aff'd*, 689 F. App'x 87 (2d Cir. 2017) (internal quotation marks and citation omitted).  However, "'[d]eprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under [Section] 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a random and unauthorized act.'"  *Barnes v. City of New York*, No. 13-CV-7283, 2015 WL 4076007, at *15 (S.D.N.Y. July 2, 2015), *report and recommendation adopted*, No. 13 CIV. 7283, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015) (collecting cases).  In the context of deprivation of property claims, "[s]tate tort causes of action, including negligence and conversion claims, have been found to provide an adequate post-deprivation remedy."  *Id.* (citations omitted); *see Nogbou v. Mayrose*, No. 07 CIV. 3763, 2009 WL 3334805, at *6 (S.D.N.Y. Oct. 15, 2009), *aff'd*, 400 F. App'x 617 (2d Cir. 2010) ("[P]ost-deprivation remedies are available under New York law 'in the form of state law causes of action for negligence, replevin, or conversion.'") (citation omitted).

"The distinction between random and unauthorized conduct and established state procedures, however, is not clear-cut."  *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006).  Ultimately, to determine whether the conduct was a result of established state procedure, "[t]he underlying question is 'whether the state [was] in a position to provide for pre-deprivation process.'"  *Polito v. City of New York*, No. 15-CV-2301, 2017 WL 6542457, at *2 (E.D.N.Y. Dec. 21, 2017) (quoting *Hudson v. Palmer*, 468 U.S. 517, 534 (1984)).

In sum, if the Court determines that the conduct at issue was not the result of established state procedures and that post-deprivation remedies were available, it must dismiss any claims for alleged violations of procedural due process.

Here, plaintiffs attempt to characterize WCSO's practice of uprooting illegal marijuana plants and participation in a multi-agency marijuana eradication effort as established state procedure; however, plaintiffs explicitly admit that there "was no written policy directing procedures on what an officer should do when suspected marijuana plants were encountered in [a] field." (Dkt. No. 40 at 15-16; Defs.' SMF ¶¶ 17, 18-20.) Moreover, plaintiffs do not dispute that the individual officers did not receive "specialized marijuana training." (Defs.' SMF ¶¶ 8-10, 17, 27-29, 35, 39, 45, 50, 53, 83, 86, 89.) Additionally, because defendants were conducting an investigation of an ongoing crime and collecting what they believed to be illegal marijuana (*id.* ¶¶ 8-10, 17, 83-89), it would not have been possible for defendants to provide pre-deprivation process. To find otherwise would require police to provide notice and a hearing before seizing apparent contraband. *See Parratt v. Taylor*, 451 U.S. 527, 539-41 (1981), *overruled on different grounds by Daniels v. Williams*, 474 U.S. 327 (1986) ("It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place . . . . Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation. That does not mean, of course, that the State can take property without providing a meaningful post[-]deprivation hearing."). Therefore, because plaintiffs admit that no written or formal procedure existed, and because no pre-deprivation process was possible, there was no "established state procedure," and all that is required to satisfy procedural due process here is an adequate post-deprivation remedy.

14

Finally, as for adequate post-deprivation remedies, state tort causes of action are available to plaintiffs to remedy any alleged harm caused by the harvesting of the plants. *Barnes*, 2015 WL 4076007, at \*15.  Indeed, plaintiffs have brought post-deprivation claims for trespass, negligence, and conversion in this case.  For these reasons, defendants did not violate plaintiffs' procedural due process rights, and defendants are entitled to summary judgment on the Fourteenth Amendment claim insofar as it is for alleged procedural due process violations.

### ii.      Substantive Due Process

Plaintiffs' Fourteenth Amendment claim does not survive summary judgment when characterized as asserting a substantive due process violation either.

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective."  *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2011) (internal quotation marks and citation omitted).  To succeed on a substantive due process claim, a plaintiff must show (1) the deprivation of a constitutional right, and (2) state action that "was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting *Southerland*, 680 F.3d at 151-52)).  The burden of showing conduct sufficient to "shock the conscience" is not easily met; a plaintiff must show that the government's conduct was "egregious" and "outrageous," and "not merely incorrect or ill-advised."  *Horton v. Westling*, 284 F. Supp. 3d 213, 222 (N.D.N.Y. 2018), *aff'd*, 765 F. App'x 531 (2d Cir. 2019) (internal quotation marks and citation omitted); *see Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).  "[N]egligently inflicted harm is categorically beneath the threshold of constitutional due process," *County of*

*Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citation omitted), and "cannot constitute conscience-shocking behavior," *Horton*, 284 F. Supp. 3d. at 222 (citing *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009)).

Here, plaintiffs have not demonstrated that defendants acted in an egregious or outrageous manner, so as to shock the conscience.  Indeed, plaintiffs admit that it was impossible for the officers to determine that the plants were hemp, because they are identical to marijuana and can only be differentiated using laboratory testing.  (Defs.' SMF ¶¶ 8-10.) Furthermore, as explained above, defendants lawfully entered the property in pursuit of suspects and discovered the plants in plain-view.  *See supra* Part IV.B.1. of this Decision and Order.  For these reasons, defendants' lawful—albeit mistaken—seizure of plants and defendants' lawful entry onto the property were not arbitrary, conscience-shocking, or oppressive and, as a matter of law, did not violate plaintiffs' substantive due process rights.

Therefore, plaintiffs having failed to demonstrate violations of procedural or substantive due process, the Fourteenth Amendment claim must be dismissed.[6]

---

[6]  Defendants do not address plaintiffs' state constitutional due process claim, under Article 1 Section 6 of the New York State Constitution.  (Dkt. No. 34, Attach. 14 at 21-23.) Nevertheless, the New York State claim is adequately addressed through defendants' arguments related to plaintiffs' Fourteenth Amendment claim because "New York courts have interpreted the due-process guarantees of the New York Constitution and the United States Constitution to be coextensive."  *Oneida Indian Nation of N.Y. v. Madison County*, 665 F.3d 408, 427 n.13 (2d Cir. 2011) (collecting cases); *see Hannan v. Rose*, No. 18CV9878, 2022 WL 21770560, at *21 (S.D.N.Y. Mar. 15, 2022) (dismissing New York State Constitution due process claim for the same reasons as a Federal Constitution due-process claim because "the standards under the New York State Constitution for . . . due process . . . are largely the same as the standards for analogous claims brought under the [F]ederal Constitution").  Therefore, although defendants have failed to mention the New York State constitutional due process claim, such claim is dismissed for the same reasons herein.

### 3.     *Monell* Liability

The County is also entitled to summary judgment on plaintiffs' Section 1983 claims pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).  Defendants argue that plaintiffs cannot establish a *Monell* claim against the County because they have not, and cannot, "identify a single practice or policy or any evidence that [d]efendants' conduct was . . . a result of a [c]ounty practice or policy."  (Dkt. No. 34, Attach. 14 at 17.)  Plaintiffs respond that, because defendants participated in a multi-agency marijuana eradication effort, which included a practice of uprooting illegal marijuana plants, the uprooting of plaintiffs' hemp plants was done in accordance with an unconstitutional policy attributable to the County.  (Dkt. No. 40 at 15-16.) However, plaintiffs also acknowledge that the County had no independent formal policy regarding the handling of suspected marijuana plants encountered in a field.  (*Id.*)

Regardless, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original) (collecting cases).  In short, there can be no municipal liability absent an underlying constitutional violation.  *Segal,* 459 F.3d at 219.  Therefore, because the constitutional claims are dismissed, the County cannot be liable pursuant to *Monell*.

### 4.     Qualified Immunity

As stated above in Part IV.A. of this Decision and Order, plaintiffs have conceded that all defendants, other than Sergeant Carroll and Deputy Jackson, are protected from liability as a matter of law by the doctrine of qualified immunity.  Additionally, though, Sergeant Carroll and

Deputy Jackson would be entitled to qualified immunity because a reasonable officer in their position would not have known that their conduct, which was not unlawful, was in violation of a clearly established constitutional right.  *See Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (describing the qualified immunity standard); *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("[W]here the factual record is not in serious dispute . . . [t]he ultimate legal determination whether, on the facts found, a reasonable police officer should have known he acted unlawfully is a question of law better left for the [C]ourt to decide.").  Accordingly, although the individual defendants are entitled to summary judgment on the merits of plaintiff's Section 1983 claims, in the alternative they are also entitled to qualified immunity from such claims.

### C.    Plaintiffs' State Law Claims

#### 1.    Trespass

Defendants' memorandum of law separates defendants into three categories: (1) those who did not enter the property (Sheriff Murphy and Deputy Director Hardy); (2) those who entered the property only with the consent of, and accompanied by, Morris (Lieutenant Lemery, Deputy Kolar, and Deputy Latour); and (3) those who were privileged to enter the property for a public purpose (Sergeant Carroll and Deputy Jackson).  (Dkt. No. 34, Attach. 14 at 26-29.) Accordingly, defendants argue that plaintiffs' trespass claim fails as against defendants for the following three reasons: (1) Sheriff Murphy was not present at the scene on October 1, 2019, and Deputy Director Hardy stayed roadside; (2) the defendants who entered accompanied by Morris entered with consent; and (3) exigent circumstances necessitated Sergeant Carroll and Deputy Jackson's entry onto the property.  (*Id.*)  Plaintiffs ostensibly concede their trespass claim as against all defendants except Sergeant Carroll and Deputy Jackson: they make no

mention of those other defendants' conduct and argue only that Sergeant Carroll and Deputy Jackson were not privileged to enter the property because they "have not provided any facts that additional suspects were hiding in the field, or that officers were in pursuit of additional suspects."[7]  (Dkt. No. 40 at 12-14.)

A plaintiff must show that a defendant made an unauthorized entry onto private property to prove trespass under New York law.  *See Rager v. McCloskey*, 305 N.Y. 75, 79 (1953) ("A trespass may consist, not only in making an unauthorized entry upon private property, but in refusing to leave after permission to remain has been withdrawn.") (citation omitted); *Hicks v. City of Buffalo*, 124 F. App'x 20, 24-25 (2d Cir. 2004) ("To prove trespass under New York law, a plaintiff must show that a defendant made an unauthorized entry onto private property that resulted in wrongful use of that property.") (citation omitted).  "However, police officers are privileged to enter private property without committing trespass when they do so for a public purpose."  *Hicks*, 124 F. App'x at 25 (citing *People v. Czerminski*, 94 A.D.2d 957, 957 (4th Dep't 1983)).  And a warrantless search "serve[s] a public purpose if . . . the search is . . . justified by 'exigent circumstances.'"  *Id.* (quoting *United States v. Gordils*, 982 F.2d 64, 69 (2d Cir.1992)).

The Court finds facial merit to defendants' unopposed arguments that the trespass claim must be dismissed as against Sheriff Murphy and Sergeant Carroll because they did not enter the

---

[7]  Plaintiffs also argue that a question of fact remains regarding whether their security measures "were enough to show their intention to exclude others from entering" the property, however, such argument has no bearing on the determinative issue of whether exigent circumstances existed that allowed Sergeant Carroll and Deputy Jackson to enter.  (Dkt. No. 40 at 14.)

property and as against Lieutenant Lemery, Deputy Kolar, and Deputy Latour because they entered accompanied by Morris, with his permission.  (Dkt. No. 34, Attach. 14 at 27-28.)  *See Matthews v. Malkus*, 377 F. Supp. 2d 350, 359 (S.D.N.Y. 2005) ("[N]either defendant ever entered . . . [the plaintiff's] property or home, so no claim for trespass lies against them."); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.") (citations omitted).  Therefore, because no unauthorized entry was made by Sheriff Murphy, Sergeant Carroll, Lieutenant Lemery, Deputy Kolar, or Deputy Latour, those defendants' unopposed and facially meritorious arguments prevail, and those defendants are entitled to summary judgment.  *McGinn, Smith & Co.*, 2015 WL 667848, at *1.

As for Sergeant Carroll and Deputy Jackson, their entry onto the property was privileged because it was done for a public purpose.  As explained above in Part IV.B.1. of this Decision and Order, exigent circumstances existed that permitted warrantless entry onto the property.  Accordingly, Sergeant Carroll and Deputy Jackson's entry onto the property was privileged, not "unauthorized," and was not trespass.  *See Hicks*, 124 F. App'x at 25 ("[A] search does serve a public purpose . . . if the search is . . . justified by 'exigent circumstances'") (citing *United States v. Gordils*, 982 F.2d 64, 69 (2d Cir.1992)).

For these reasons, plaintiffs' trespass claim fails as a matter of law as against all defendants and is dismissed.[8]

_____

[8]   Defendants neglect to address whether the trespass claim as against the County, which is predicated on respondeat superior liability, should also be dismissed.  However, the trespass claim must be dismissed as against the County by operation of law because, after dismissing the

2.      **Negligence**

Defendants contend that the negligence claim fails as a matter of law because plaintiffs

"have not identified a special duty held by any [d]efendant," and that, even if plaintiffs

identified a special duty, defendants are insulated from liability by the professional judgment

rule.  (Dkt. No. 34, Attach. 14 at 29-30.)  Plaintiffs argue that, as a licensed participant in the

NYSDAM Industrial Hemp Agriculture Pilot Program (hereinafter "the Hemp Program"),

plaintiffs "belong to a class for whose benefit the [Hemp Program] regulations were enacted," to

which a special duty was owed by defendants.  (Dkt. No. 40 at 7-11.)

The New York Court of Appeals has "restrict[ed] the scope of duty" owed by the

government in the context of a negligence action: "'[t]o sustain liability against a municipality,

the duty breached must be more than that owed the public generally.'"  *Valdez v. City of New*

*York*, 18 N.Y.3d 69, 75 (2011) (quoting *Lauer v City of New York*, 95 N.Y.2d 95, 100 (2000)).

Accordingly, pursuant to the "public duty rule," "the plaintiff in a negligence action must . . .

establish that the municipality owed a duty of care by demonstrating the existence of a special

duty beyond the obligation owed the public at large."  *Valdez*, 18 N.Y.3d at 75-77.  The public

duty rule limits only the scope of duty for municipal liability; it is not applicable to individual

defendants.  See *Ferreira v. City of Binghamton*, 975 F.3d 255, 282-91 (2d Cir. 2020), *certified*

---

trespass claim as against the individual defendants, "there is no tort upon which respondeat
superior liability may be predicated."  *Hargroves v. City of New York*, No. 03-CV-1668, 2014
WL 1271024, at *4 (E.D.N.Y. Mar. 26, 2014) (citation omitted); *see also Stevens v. City of New
York*, No. 10 CIV. 2172, 2012 WL 5862659, at *4 n.6 (S.D.N.Y. Nov. 14, 2012) ("[T]he Court
has dismissed the assault and battery claim against the individual police officers; therefore, there
is no substantive offense for which the City of New York can be held vicariously liable.  Where
'there [is] no surviving underlying theory of liability,' the respondent superior claims must be
dismissed.") (citations omitted).

*question accepted*, 35 N.Y.3d 1105 (2020), *and certified question answered*, 38 N.Y.3d 298

(2022) (explaining how the Court of Appeals "has shaped the complex doctrine of exceptions to

*municipal liability*") (emphasis added).

The New York State Court of Appeals has recognized three situations where a special

duty, sufficient to satisfy the public duty rule, may arise: "(1) the plaintiff belonged to a class for

whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the

plaintiff beyond what was owed to the public generally; or (3) the municipality took positive

control of a known and dangerous safety condition." *Maldovan v. County of Erie*, 39 N.Y.3d

166, 171 (2022) (internal quotation marks and citation omitted).  To form the requisite special

duty under the first situation, breach of a statutory duty, "'the governing statute must authorize a

private right of action.'"  *McLean v. City of New York*, 12 N.Y.3d 194, 200 (2009) (citation

omitted).  If not explicitly authorized in the statute, a private right of action "may be fairly

implied when (1) the plaintiff is one of the class for whose particular benefit the statute was

enacted; (2) recognition of a private right of action would promote the legislative purpose of the

governing statute; and (3) to do so would be consistent with the legislative scheme." *McLean*,

12 N.Y.3d at 200 (internal quotation marks and citations omitted).  If there is no explicit private

right of action under the statute and any of the three prerequisites is lacking, so that no private

right my be fairly implied, the negligence claim will fail as against a municipality.  *Id.*

Here, plaintiffs argue they were owed a special duty because the Hemp Program was

enacted for their benefit.  (Dkt. No. 40 at 7-9.)  However, plaintiffs fail to provide citation to

where in the regulations a right to civil action is explicitly conferred upon private parties and

offers no alternative argument that such private right of action is implied.

Regardless, upon review of the regulations, the Court finds that there is no explicit or implicit creation of a private right of action.  1 N.Y. Comp. Codes. R. & Regs. § 159.1-18.  Indeed, the Hemp Program is a regulatory scheme enacted, and enforced, by a New York regulatory agency; there is no indication, explicit nor implicit, that the enforcement of the regulation of licensure to grow hemp falls within the purview of private civil litigation.  *See id.* § 159.15-18 (establishing categories of violations, respective penalties, license suspension, and enforcement by the regulator).  Therefore, plaintiffs have failed to show that the County owed them a special duty under the regulations and the negligence claim must be dismissed as against the County.[9]

On the other hand, defendants' argument that the individual defendants are immune pursuant to the "professional judgment rule," while seemingly unopposed by plaintiffs, is without merit (facial or otherwise).  (Dkt. No. 34, Attach. 14 at 29-30.)  The rule provides that **municipal defendants** "acting with discretionary or reasoned judgment[, are] immune from negligence suits."  *Levy v. State*, 262 A.D.2d 230, 230 (1st Dep't 1999) (citing *Tango v. Tulevech*, 61 N.Y.2d 34, 41 (1983)); *see Lauer*, 95 N.Y.2d at 99 ("A public employee's discretionary acts—meaning conduct involving the exercise of reasoned judgment—may not result in *the municipality's liability* even when the conduct is negligent.") (emphasis added).

---

[9]  Defendants misapprehend the application of the public duty rule and argue that it is the basis for summary judgment on the negligence claim for all defendants.  (Dkt. No. 34, Attach. 14 at 29-30.)  However, New York courts applying the rule do so only as to municipal defendants and not individual defendants.  *See Russo v. Reyes*, No. 158655/2013, 2014 WL 6669695, at *4 (N.Y. Sup. Ct. Nov. 25, 2014) (dismissing negligence claim against municipality for lack of special duty, but not dismissing the negligence claim as against individual defendant police officers).  For this reason, the negligence claim is dismissed only as against the County pursuant to the public duty rule.

Defendants have failed to supply (and the Court is not aware of any) authority that would support the conclusion that such immunity is also extended to individual defendants.[10]

Therefore, although the claim fails as against the County, defendants have not demonstrated that the individual defendants are entitled to summary judgment on plaintiffs' negligence claim.[11]

### 3.    Conversion

Defendants contend that the conversion claim fails as a matter of law because they obtained possession of the plants lawfully.  (Dkt. No. 34, Attach. 14 at 30.)  Plaintiffs argue that Sergeant Carroll and Deputy Jackson continued to uproot the plants after finding the Toadflax tags, thereby converting the plants.  (Dkt. No. 40 at 14-15.)

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50

---

[10]   In fact, at least one case relied upon by defendants indicates that New York courts, in cases involving a municipal defendant and individual defendant police officers, dismiss negligence claims pursuant to the professional judgment rule solely as against the municipality and not as against individuals.  *See Russo*, 2014 WL 6669695, at *4-5 (dismissing negligence claim only as against municipal defendant, and retaining such claim against individual defendant police officer, where professional judgment rule/governmental immunity argument was raised).

[11]   There is no view of the facts, however, that could support a negligence claim as against Sheriff Murphy because he was not present on October 1, 2019, and there are no allegations or facts to indicate that he committed any tortious act personally.  *See Palmer v. City of New York*, 564 F. Supp. 3d 221, 252 (E.D.N.Y. 2021) ("Under New York law, 'a [s]heriff cannot be held personally liable for the acts or omissions of his deputies while performing criminal justice functions, and [this] principle precludes vicarious liability for the torts of a deputy.'") (quoting *D'Amico v. Corr. Med. Care, Inc.*, 120 A.D.3d 956, 958-59 (4th Dep't 2014)).  Therefore, the negligence claim is dismissed as against Sheriff Murphy.

24

(2006) (citation omitted).  However, "[w]hen a defendant's possession of the property was initially lawful, there is no conversion unless the defendant refuses the owner's demand to return the property or wrongfully transfers or disposes of it before a demand is made."  *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 414 (S.D.N.Y. 2007) (citing *MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.*, 193 N.Y. 92, 101 (1908)), *aff'd*, 268 F. App'x 17 (2d Cir. 2008).  In other words, "one who comes lawfully into possession of property cannot be charged with conversion thereof until after a demand and refusal."  *MacDonnell*, 193 N.Y. at 101.

As discussed above in Part IV.B.1. of this Decision and Order, defendants' initial possession of the plants, seizing what they believed to be contraband, was justified and, therefore, lawful.  Plaintiffs do not argue—and there is no admissible evidence in the record to indicate—that defendants refused a demand to return the plants.[12]  Moreover, none of the plants were ever removed from the property.  (Defs.' SMF ¶ 120.)  Therefore, because defendants lawfully obtained possession of the plants, and did not refuse a demand by plaintiffs to return them, plaintiffs' conversion claim fails as a matter of law.

### 4.     Remand of Surviving Negligence Claim

With regard to the negligence claim surviving defendants' motion, a district court may decline to exercise supplemental jurisdiction over a claim where the district court has dismissed

---

[12]  Plaintiffs argument that Sergeant Carroll and Deputy Jackson continued to harvest the plants after they found the tags with the Toadflax emblem is irrelevant.  (Dkt. No. 40, at 14-15.)  Whether the officers continued to uproot plants, or not, the tags did not indicate that the plants were legal hemp and Deputy Jackson testified during his deposition that he and the other officers continued to believe, even after discovering the tags, that they had encountered a marijuana-growing operation.  (Dkt. No. 40, Attach. 13 at 20:22-21:24.)

all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Declining to exercise

supplemental jurisdiction is discretionary, not mandatory. *Valencia ex rel. Franco v. Lee*, 316

F.3d 299 (2d Cir.2003); *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118 (2d Cir.2006).

Here, after carefully considering the matter, the Court declines to exercise supplemental

jurisdiction over plaintiff's surviving negligence claim and remands that claim to state court,

because remanding "promote[s] the comity interest that informs the doctrine of supplemental

jurisdiction," state court was the forum of plaintiff's choice, and "there is no specter . . . of any

bad faith effort to 'manipulate the forum' in a manner that counsels against a remand." *De

Hernandez v. Lutheran Med. Ctr.*, 01-CV-6730, 2002 WL 31102638, at *2 (E.D.N.Y. Sept. 11,

2002).

     **ACCORDINGLY**, it is

     **ORDERED** that defendants' motion for summary judgment (Dkt. No. 34) is

**<u>GRANTED</u> in part** and **<u>DENIED</u> in part** as follows:

     (1) it is **<u>DENIED</u>** as to plaintiffs' negligence claim as against Lieutenant Lemery,

     Sergeant Carroll, Deputy Director Harding, Deputy Jackson, Deputy Kolar, and

     Deputy Latour; and

     (2) it is **<u>GRANTED</u>** in all other respects; and it is further

     **ORDERED** that the Clerk of Court shall terminate the County and Sheriff Murphy as

defendants in this case; and it is further

     **ORDERED** that the only claim surviving for trial is for negligence against Lieutenant

Lemery, Sergeant Carroll, Deputy Director Harding, Deputy Jackson, Deputy Kolar, and Deputy

Latour; and it is further

**ORDERED** that the aforementioned surviving negligence claim is *sua sponte*

**REMANDED** to New York State Supreme Court, Washington County, pursuant to 28 U.S.C. §

1367(c)(3).

Dated: May 28, 2024
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge